# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SANDRA RENEE DIAZ,

        Plaintiff,

v.                                                                      Case No. 19-CV-872

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

        Defendant.

# DECISION AND ORDER

## 1. Introduction

Plaintiff Sandra Renee Diaz filed an application for supplemental security income on October 10, 2006, alleging that she has been disabled since August 1, 2005. (Tr. 19, 343.) After her application was denied initially (Tr. 162) and upon reconsideration (Tr. 163), a hearing was held before an administrative law judge (ALJ) on April 14, 2009 (Tr. 69-99). On April 27, 2009, the ALJ issued a written decision concluding that she was not disabled. (Tr. 164-73.) The Appeals Council on December 8, 2009, remanded the case for rehearing. (Tr. 174-78.)

Following a second hearing (Tr. 100-24), in a decision dated December 6, 2010, the ALJ again concluded that Diaz was not disabled. (Tr. 179-94.) The Appeals Council again remanded the case on July 13, 2012 (Tr. 200-02), and another hearing was held, this time before a new ALJ. This latest hearing was held on January 16, 2013. (Tr. 125-61.) In a decision dated April 11, 2013, the ALJ again found Diaz was not disabled. (Tr. 16-27.)

After the Appeals Council denied review (Tr. 1-3) Diaz filed an action in federal court, and the district court affirmed the decision of the Commissioner. *Diaz v. Colvin*, No. 13-C-1294, 2015 U.S. Dist. LEXIS 10394 (E.D. Wis. Jan. 29, 2015). Diaz appealed, and while that appeal was pending the Commissioner determined that remand for further proceedings was appropriate. (13-CV-1294, ECF No. 30.) After the district court indicated a willingness to grant the requested relief, the court of appeals remanded the appeal to the district court, which on November 16, 2015, modified its judgment and remanded the matter to the Commissioner. (13-CV-1294, ECF No. 37.)

Thus, a fourth hearing was held before an ALJ on April 5, 2016. (Tr. 1032-84.) The ALJ on July 27, 2016, yet again found that Diaz was not disabled. (Tr. 1104-23.) The Appeals Council on November 21, 2017, remanded the matter to the ALJ. (Tr. 1131-35.) On July 31, 2018, the ALJ issued a partially favorable decision, concluding that Diaz was disabled as of June 1, 2016, but not before. (Tr. 904-932.) The Appeals Council denied Diaz's request for review on April 13, 2019. (Tr. 896-900.)

Diaz then filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 14, 15), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Diaz "has not engaged in substantial gainful activity since the alleged onset date." (Tr. 912.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Diaz had the following severe impairments: "bipolar disorder, postpartum depression, diabetes, obesity and asthma. Beginning on the established onset date of disability, June 1, 2016, the claimant has had the following additional severe impairments: peripheral neuropathy and diabetic retinopathy." (Tr. 912.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20

C.F.R. § 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that "[s]ince the alleged onset date of disability, August 1, 2005, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 913-14.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that during the relevant period Diaz had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to no climbing of ladders, ropes or scaffolds and occasional remaining postural activities; occasional exposure to pulmonary irritants; understanding, remembering and carrying out no more than simple instructions; occasional decision making and changes in a work setting; no

contact with the public; and occasional contact with coworkers and supervisors.

(Tr. 915.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), 416.960. The ALJ concluded that Diaz had no past relevant work. (Tr. 929.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that, as to the relevant period, "the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 931.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

**4. Analysis**

**4.1. Roland Manos**

The agency retained Roland Manos, Ph.D., to perform a consultative psychological examination of Diaz in October 2010. (Tr. 921.) Manos's assessment was based on a one-time examination of Diaz, a review of Diaz's records from ProHealth Care, the last of which was dated nearly 15 months prior to his exam, and an interview of Diaz's father. (Tr. 707.) In the section of his report headed "Statement of Work Capacity," Manos stated:

> Ms. Diaz seems capable of understanding and remembering simple instructions; however she may simply lack motivation to carry out simple tasks. Of greater concern is her ability to respond appropriately to supervisors and coworkers. She has been unsuccessful in maintaining employment beyond a few months. She admitted that she does not like to be told what to do. She has left her husband several times and has ended relationships often for no reason. She seemed able to maintain concentration. At this time, Ms. Diaz appears to be intolerant of routine stress. She seems to be capable of adapting to changes.

(Tr. 711.)

Manos concluded that Diaz had no limitations in her ability to understand and remember both simple and complex instructions. (Tr. 713.) She had mild to moderate limitations in her ability to make judgments on simple or complex work-related decisions. (Tr. 713.) She had moderate limitations in her ability to carry out simple or complex instructions. (Tr. 713.) She had mild limitations in the ability to interact appropriately with the public and respond appropriately to usual work situations and changes in routine. (Tr. 714.) And she had marked limitations in her ability to interact appropriately with supervisors or coworkers. (Tr. 714.)

The ALJ gave Manos's opinions "partial weight." (Tr. 925.) The ALJ accepted Manos's conclusions that, although Diaz was able to understand and remember instructions, she had moderate difficulty in carrying out those instructions due to a lack of motivation. (Tr. 925.) He also accepted Manos's opinion that Diaz "would have mild to moderate limitations in her ability to make judgments on simple or complex work-related decisions …." (Tr. 925.)

However, the ALJ discounted Manos's opinions regarding Diaz's abilities to handle work stress and her limitations in social functioning. (Tr. 925.) Diaz argues that the ALJ's decision to afford Manos's opinions "partial weight" was not supported by substantial evidence. (ECF No. 22 at 15-22.) Specifically, she argues that the ALJ erred in rejecting Manos's conclusion that Diaz would be intolerant of routine work stresses, and

7
Case 2:19-cv-00872-WED    Filed 08/04/20    Page 7 of 17    Document 29

that she would have marked difficulty in interacting appropriately with supervisors and coworkers.

"As a general rule, an ALJ is not required to credit the agency's examining [medical source] in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However, because "rejecting or discounting the opinion of the agency's own examining [medical source] that the claimant is disabled" is an "unusual step," the ALJ must provide a "good explanation" for doing so. *Id.*; *see also Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) ("An ALJ may not discount the opinion of an examining physician without a valid explanation …."); *Knapp v. Berryhill*, 741 F. App'x 324, 328 (7th Cir. 2018) ("The ALJ must explain his decision [to discount an opinion by a consultative examiner] by again applying the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c).")).

### 4.1.1. Stress Tolerance

The ALJ concluded that Manos's opinion regarding Diaz's stress tolerance "conflicts with her improvement with medication, her generally good mental status examinations, and the absence of more intensive and highly structured mental health care (Ex. 2F/33; 7F/4; 12F/21, 32, 36, 38; 14F/31; 19F-23, 35; 25F/25, 60, 66, 73, 77; 27F/5, 15, 19)." (Tr. 925.)

In assessing the severity of Diaz's impairments, the ALJ appropriately noted the absence of more intensive treatment as a relevant factor. This observation did not amount

8
Case 2:19-cv-00872-WED    Filed 08/04/20    Page 8 of 17    Document 29

to impermissibly "playing doctor." *Cf. Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 887 (N.D. Ill. 2003) ("Typical cases of ALJs impermissibly 'playing doctor' are when they either reject a doctor's medical conclusion without other evidence or when they draw medical conclusions themselves about a claimant without relying on medical evidence." (citations omitted)). Rather, the ALJ was noting merely that Diaz's treatment had been relatively conservative, just as he had observed a few paragraphs earlier when discussing the opinion of Dr. Michael Eis, a treating psychiatrist. In assessing Dr. Eis's opinion of Diaz's stress tolerance, the ALJ stated that "this degree of mental impairment is not consistent with the claimant's routine and conservative mental health treatment: she has not required emergency, day, or inpatient treatment (see, Exh. 2F, 12F, 19F, 27F)." (Tr. 924.) It is appropriate, and in fact routine, for an ALJ to characterize the nature of treatment and to consider it when assessing the severity of an impairment. *Cf.* SSR-16-3p (requiring consideration of treatment as a factor in assessing symptom severity). This routine observation was within the lay purview of an ALJ.

However, the two other facts that the ALJ identified for discounting Manos's opinion regarding Diaz's ability to tolerate stress are not supported by the evidence. Although medical records cited by the ALJ note that Diaz's psychosis improved and her bipolar disorder was in remission, they say nothing about whether her ability to handle stress improved. (*See* Ex. 2F/33, Tr. 573 (Nov. 28, 2006, "Psychosis appears to be largely resolved at this point."); 7F/4, Tr. 607 (Mar. 20, 2007, "Bipolar disorder type I, most recent

9
Case 2:19-cv-00872-WED    Filed 08/04/20    Page 9 of 17    Document 29

episode depressed with some relapse. Patient not exhibiting any psychosis."); 12F/21, Tr. 647 (Mar. 11, 2008, "Bipolar disorder type 1, previously depressed with psychotic symptoms resolved, stable …."); 12F/32, Tr. 658 (Oct. 16, 2007, "Bipolar disorder type I, currently remitted previous episode depressed."); 12F/36, Tr. 662 (June 26, 2007, "Bipolar disorder type I, most recent episode depressed with psychotic features, partially resolved …. The patient doing well on current combination of medications and life circumstance appears to be also greatly beneficial."); 12F/38, Tr. 664 (May 1, 2007, "Most recent episode depressed with previous relapse due to noncompliance. The patient has shown dramatic improvement since reintroduction of medications and also through steps on her own part to change her living situation for her benefit."); 14F/31, Tr. 701 (Feb. 10, 2009, "Bipolar disorder I, previous episode depressed; fully remitted and stable."); 19F/23, Tr. 743 (July 28, 2009, "Bipolar disorder I, previous episode depressed, considered still fully remitted…. Adjustment reaction with depressive features due to circumstances overriding, likely will pass and [sic] time."); 19F/35, Tr. 755 (Jan. 26, 2010 "Bipolar disorder I, currently depressed…. Will continue medications. … Patient's self-image extremely negative and feel that this is directly implicated in her outlook. She has a lot of very self-destructive habits and patterns in relationships and unless this is somehow changed, improvement not likely.").) Moreover, the fact that symptoms have improved does not foreclose a finding that those symptoms are nevertheless still debilitating. *See Ivy-Covington v. Saul*, No. 19-CV-213, 2020 U.S. Dist. LEXIS 39844, at *11 (E.D. Wis. Mar.

10

9, 2020) (quoting *Herron v. Colvin*, No. 14-CV-56, 2014 U.S. Dist. LEXIS 161947, at *18 (E.D. Wis. Nov. 19, 2014)).

And while certain of the cited records reflect "generally good mental status examinations," those observations were not made in conjunction with psychological treatment. Rather, they were noted as part of routine preliminary examinations in conjunction with treatment for diabetes, abdominal pain, and a hysterectomy. (*See* 25F/25, Tr. 1629 (Aug. 7, 2013, notes regarding physical exam preceding hysterectomy stating no psychologic abnormalities); 25F/60, Tr. 1664 (July 13, 2015, notes regarding a "diabetic foot exam" stating no psychologic abnormalities); 25F/66, Tr. 1670 (Sept. 8, 2015, notes regarding a "diabetic foot exam" stating no psychologic abnormalities); 25F/73, Tr. 1677, (Dec. 17, 2015, notes regarding a "diabetic foot exam" stating no psychologic abnormalities); 25F/77, Tr. 1681 (Apr. 13, 2016, notes from a diabetes follow-up stating no psychologic abnormalities); 27F/5, Tr. 1692 (Apr. 1, 2016, notes regarding complaint of abdominal pain stating no psychologic abnormalities); 27F/15, Tr. 1702 (May 26, 2016, notes from a diabetes follow-up stating no psychologic abnormalities); 27F/19, Tr. 1706 (June, 20, 2016, notes from a diabetes follow-up stating no psychologic abnormalities).) Such rote observations in an unrelated context are of minimal value in assessing Diaz's psychological condition. But, more significantly, even those observations were unrelated to the symptom at issue—Diaz's stress tolerance.

The court cannot say that the ALJ identified "compelling evidence" that is inconsistent with Manos's conclusion regarding Diaz's ability to handle work-related stress. The ALJ failed to provide a good explanation for his decision to discount Manos's conclusion regarding Diaz's stress-related limitations, and remand is required.

### 4.1.2. Social Interaction

As for Diaz's social functioning limitations, the ALJ noted that, "[a]lthough asked to identify the factors supporting this assessment, Dr. Manos did not provide any" aside from, perhaps, noting that Diaz said she did not like being told what to do. (Tr. 925.) As to this point, the ALJ was correct. Rather than identifying specific factors that supported his conclusion, Manos wrote simply that Diaz's ability to interact with others "is impaired due to Bipolar Disorder and Borderline Personality Disorder." (Tr. 714.)

The ALJ continued:

> Dr. Manos's opinions as to the claimant's limitations in social functioning are afforded little weight, as they appear to rely on the claimant's subjective reports and are not consistent with the overall evidence of record. Rather, as noted above, the record reflects that the claimant consistently interacts appropriately with treating and examining provider (Exh. 21F/5; 24F; 25) and has some ability to engage in activities requiring her to go out into the community and interact well with others (Exh. 17F). Insofar as the record reflects subjective reports as to difficulties with social interaction, such as those reported to Dr. Manos, these are accommodated in the residual functional capacity finding herein, which restricts the claimant to work requiring only occasional interaction with coworkers and supervisors, and no interaction with the public.

(Tr. 925.)

As Diaz notes, discounting a medical opinion solely because it rests on a patient's subjective complaints may be error. (ECF No. 22 at 20 (citing *Thompson v. Berryhill*, 722 F. App'x 573, 581 (7th Cir. 2018) (unpublished).) Some impairments do not result in objective symptoms and thus subjective complaints, "filtered through the [medical expert's] training and judgment," are the only means for diagnosis and assessment. *Thompson*, 722 F. App'x at 581. However, the ALJ did not discount Dr. Manos's opinion *solely* because it was based on Diaz's subjective complaints. Rather, the ALJ discounted the opinion because it was based on Diaz's subjective complaints *and* he concluded the claimed limitations were "not consistent with the overall evidence of record." This would be appropriate and consistent with the ALJ's obligation in assessing subjective evidence. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (citing 20 C.F.R. § 404.1527(c)(3) and (4)), but only if the ALJ adequately explained why the limitations are not consistent with the overall record.

The ALJ noted that the record demonstrated that Diaz "consistently interacts appropriately with treating and examining provider[s] (Exh. 21F/5; 24F; 25) …." (Tr. 925.) The ALJ was not equating an ability to interact with a medical provider during an appointment with being able to interact appropriately with supervisors and coworkers on a sustained basis. Nor was the ALJ suggesting that he would find Diaz limited in interacting with others only if she refused to cooperate with medical providers. He was merely noting that Diaz interacted appropriately with medical providers as one factor in

13

his conclusion that she not as limited in this domain as Manos said. Contrary to Diaz's argument, this was an appropriate observation, albeit one that may be only weakly probative.

The ALJ also noted that Diaz "has some ability to engage in activities requiring her to go out into the community and interact well with others." The ALJ cited Manos's report (Ex. 17F) in support. However, it is unclear to what portion of Manos's report he may have been referring. As regards social functioning Manos wrote:

> Ms. Diaz gets along fairly well with her husband and children. She recalled that she had one friend, "I pushed her away too." She generally does not get along with her father. She recalled that her father was emotionally abusive. She feels she is unable to please him. She has historically had trouble maintaining healthy relationships. She usually ends the relationships, often without a valid reason.

(Tr. 711.) The only references to Diaz going "out into the community" is that Diaz reported, "She and her daughter purchase the household groceries. She goes to her youngest son's teacher conferences. She and her family sometimes attend a local festival." (Tr. 710-11.)

Based on these facts in Manos's report it was accurate for the ALJ to conclude that Diaz "has some ability to engage in activities requiring her to go out into the community and interact well with others." But these activities were not inconsistent with Manos's conclusion that Diaz had marked limitations in social functioning. A person who has a "marked" limitation in social interaction will always have "some ability" to engage in

social interaction; a "marked" limitation is not a complete inability. Thus, this observation cannot constitute a good reason for discounting Manos's opinion.

It is unclear whether the ALJ meant that Diaz could "interact well with others" when she would "go out into the community" or if this was an independent domain where she had "some ability." If the latter, the only references Manos made that might suggest that Diaz was able to "interact well with others" was when he stated that Diaz "gets along fairly well with her husband and children." In all other relationships Manos discussed—Diaz's father and her former friends—Manos noted that Diaz struggled. And even with respect to the relationship with her husband and children Manos seemed to be using "fairly well" very loosely. Manos noted that Diaz "has left her husband numerous times," "often for no reason" (Tr. 709, 711), and she has been physically abusive toward her sons (Tr. 709).

Reviewing the ALJ's explanation as a whole, the court cannot say that the ALJ has offered sufficient reasons for discounting Manos's opinion regarding Diaz's limitations in social interaction. None of the facts the ALJ cited were inconsistent with Diaz having a marked limitation in her ability to interact with coworkers or supervisors. Consequently, remand is required.

### 4.2. Residual Functional Capacity

Diaz also argues that the ALJ erred with respect to the hypotheticals he presented to the vocational expert. At step three, the ALJ found that Diaz had a "moderate

15

limitation" in "interacting with others." (Tr. 914.) But in the hypotheticals he presented to the vocational expert the ALJ limited her to "[n]o contact with the public, but occasional contact with coworkers and supervisors." (Tr. 1020; *see also* Tr. 1022.)

Diaz argues that there is no evidence that limiting her to occasional contact with coworkers and supervisors adequately accounted for her moderate limitation in interacting with others. (ECF No. 22 at 22.) She also notes the incongruity in the ALJ's decision to limit her to jobs with no interaction with the public but occasional interaction with coworkers, despite the fact that Manos found she was actually less limited in public interaction than in interactions with coworkers or supervisors. (ECF No. 22 at 23.)

With respect to Diaz's argument that the limitation to "occasional contact with coworkers and supervisors" is inconsistent with the "moderate limitation" in "interacting with others" that the ALJ found at step three, the Commissioner responds that an ALJ cannot use step three findings in an RFC finding. (ECF No. 27 at 21 (discussing SSR 96-8p; citing *Ploense v. Colvin*, 167 F. Supp. 3d 955, 966-67 (E.D. Wis. 2016) ("For the ALJ to treat his step 3 findings as to the broad paragraph B criteria as an RFC assessment would have been a clear violation of the SSA's specific Ruling on the subject.").) Diaz does not address this point in reply. The incongruity of the ALJ's findings regarding public versus coworker interactions, if error at all, was harmless.

The court finds no error in the hypothetical the ALJ presented to the vocational expert. The hypothetical included the limitations found in the ALJ's RFC finding. (*Compare* Tr. 915 *with* Tr. 1020, 1022.)

## 5. Conclusion

Because the ALJ failed to provide good reasons for discounting the opinions of the consultative examiner regarding Diaz's limitations with respect to work-related stress and interactions with coworkers and supervisors, remand is required. Remand is limited to the portion of the ALJ's decision that was unfavorable to Diaz, *i.e.* whether Diaz was disabled prior to June 1, 2016. *See Dehart v. Colvin*, No. 15-CV-322, 2016 U.S. Dist. LEXIS 194891, at *5-8 (E.D. Wis. Jan. 27, 2016).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of August, 2020.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge